UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PUDUCAH DIVISION

| | |
|---|---|
| DAMON POINDEXTER | ) |
| | ) Judge: |
| Plaintiff; | ) |
| | ) Case No. 5:10CV-32-R |
| vs. | ) |
| | ) **COMPLAINT WITH** |
| BRAD BOYD, individually | ) **JURY DEMAND** |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| And | ) |
| | ) |
| MISSY LANCASTER, individually | ) |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| And | ) |
| | ) |
| OFFICER HENSLEY, individually | ) |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| And | ) |
| | ) |
| LIEUTENANT DIETRICH, individually | ) |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| And | ) |
| | ) |
| DEPUTY JAILER FAULK, individually | ) |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| And | ) |
| | ) |
| MAJOR HOWARD, individually | ) |
| 410 West 7th Street | ) |
| Hopkinsville, KY 42240 | ) |
| | ) |
| Defendants. | ) |

_____

Comes now the Plaintiff, DAMON POINDEXTER, by and through counsel and for his Complaint states the following:

## JURISDICTION AND VENUE

1. This Court has proper jurisdiction to hear this case under 28 U.S.C. § 1331 and 42 U.S.C. §1983 because the nexus of this complaint concerns a federal question regarding civil rights violations endured by the Plaintiff, Damon Poindexter. The Civil Rights violations occurred directly and proximately as a result of State action.

2. This Court also has proper jurisdiction to hear this case under 28 U.S.C. §1367 because the state law claims are so related that they are part of the same case or controversy.

3. This Court has proper venue under 28 U.S.C. §1391.

## BACKGROUND

4. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

5. At all relevant times Damon Poindexter (Hereafter "Plaintiff") was a citizen and resident of Christian County in the Commonwealth of Kentucky.

6. At all relevant times Brad Boyd was the Jailer of the Christian County Jail. The Christian County Jail is located at 410 West 7th Street in Hopkinsville, KY.

7. At all relevant times Christian County was a county organized and existing under the laws of the Commonwealth of Kentucky.

8. At all relevant times Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard were employees of Christian County Jail, Brad Boyd, and Christian County. Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk,

and Major Howard were under the supervision and control of Brad Boyd.

9. This Complaint is made upon information and belief based upon facts currently available to the Plaintiff.

10. At all relevant times Brad Boyd and Christian County Jail were under the control and supervision of Christian County.

11. At all relevant times Brad Boyd had the responsibility to supervise deputy jailers and to ensure that inmates received proper medical care.

12. At all relevant times, Brad Boyd had the duty to supervise Jailers and the nursing staff to ensure they provided adequate medical care to inmates.

13. At all relevant times Missy Lancaster was an agent of Christian County and the Christian County Jail.

14. At all relevant times, Missy Lancaster was responsible for providing medical treatment to inmates of the Christian County Jail and ensuring that inmates received adequate medical treatment at the Christian County Jail.

15. At all relevant times, Brad Boyd had a duty to supervise Missy Lancaster to ensure she provided adequate medical care and abided by jail policies and procedures.

16. At all relevant times, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard were agents of Christian County and the Christian County Jail.

17. At all relevant times, Brad Boyd had the duty to supervise Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard to ensure they provided access to adequate medical care and abided by jail policies and procedures.

18. On information and belief, Brad Boyd acted with deliberate indifference in disregarding prison policy concerning medical treatment for the Plaintiff.

19. On information and belief, Brad Boyd knowingly acquiesced to a custom of depriving prisoners of the Christian County Jail their interest in 14th amendment due process and the 8th amendment right to be free from cruel and unusual punishment. Specifically, on information and belief, Brad Boyd knowingly disregarded or knowingly acquiesced to a custom amongst jailers that deprived inmates necessary medical care and a custom that knowingly caused inmates excruciating pain beyond levels medically acceptable.

20. Brad Boyd's knowing acquiescence to constitutional violations constitutes a reckless, callous, injurious, shocking, grossly-negligent, or an intentional act.

21. Missy Lancaster acted with deliberate indifference to the Plaintiff's constitutional rights by knowingly withholding the medical care necessary to prevent serious and permanent injury to the Plaintiff.

22. Missy Lancaster participated in a custom of depriving inmates their interest in 14th amendment due process and 8th amendment right to be free from cruel and unusual punishment. Specifically, Missy Lancaster deprived the Plaintiff access to proper medical care and knowingly caused the Plaintiff excruciating pain beyond levels medically acceptable.

23. Missy Lancaster's denial of medical care to the Plaintiff constitutes a reckless, callous, injurious, shocking, grossly-negligent, or an intentional act.

24. Missy Lancaster worked in furtherance of an agreement to limit inmate access to healthcare to control costs without regard to prisoner rights.

25. Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard knowingly disregarded prison policy intended to protect the Plaintiff from violations of his constitutional rights and civil liberties.

26. Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and

Major Howard participated in the custom of depriving inmates their interest in 14th amendment due process and 8th amendment right to be free from cruel and unusual punishment. Specifically, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard knowingly deprived the Plaintiff access to medical care necessary to prevent permanent injury.

27. Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howards' knowing deprivation of medical care to the Plaintiff constitutes a reckless, callous, injurious, shocking, grossly-negligent, or an intentional act.

28. Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard worked in furtherance of an agreement amongst staff to limit prisoner access to healthcare in order to cause pain and to control costs without regard to prisoner rights.

29. The Plaintiff endured violations of his 14th amendment due process rights and his 8th amendment right to be free from cruel and unusual punishment when Christian County, the Christian County Jail, Brad Boyd, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard acted to cause unreasonable pain, denied access to necessary healthcare, completely denied healthcare for extended periods, and knowingly disobeyed doctors orders.

**GENERAL ALLEGATIONS**

30. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

31. On or about August 10, 2009 the Plaintiff, an inmate at Christian County Jail, attended the recreation session.

32. The Plaintiff and eight other inmates played basketball while at the recreation session. During the basketball game the Plaintiff, Bill Sander, Eric Dillard, Kenneth Gray, and Darnell

Blane heard a loud "pop" from the Plaintiff's achilles tendon.

33. Bill Sander helped the Plaintiff to the guard door and buzzed for the guard's help. After requesting the guards help, Office Hensley responded ten to fifteen minutes later.

34. Officer Hensley refused to allow Bill Sanders to help the Plaintiff through the guard door.

35. Officer Hensley stated that the Plaintiff did not need assistance through the guard door and refused to allow Bill Sanders to help the Plaintiff walk through the door.

36. The Plaintiff was forced to walk on his torn achilles tendon to the 503 or 504 holding cell in order for him to see the staff nurse.

37. Missy Lancaster, the staff nurse at Christian County Jail, briefly examined the Plaintiffs injury and stated she believed that he tore his achilles tendon and instructed Officer Hensley to give the Plaintiff Ibuprofen three times.

38. Missy Lancaster also instructed Officer Hensley to give the Plaintiff ice throughout the evening.

39. Missy Lancaster also stated that she would see the Plaintiff the next day because it was the end of the day for her.

40. After the visit to the Missy Lancaster, the guards forced the Plaintiff to walk back to cell 791 and in the process the Plaintiff lost his balance numerous times.

41. Officer Hensley only gave the Plaintiff one ibuprofen and one ice bag. Officer Hensley disregarded the nurse's instructions to give him three ibuprofen and ice throughout the night. The Plaintiff suffered agonizing pain throughout the evening.

42. The Plaintiff did not receive any ice or ibuprofen the next day.

43. On or about August 11, 2009 the Plaintiff requested to see Missy Lancaster three

times and received no response despite being told he would see Missy Lancaster that day.

44. Throughout the day of August 11, 2009, the Plaintiff could not get out of bed due to severe pain and required assistance with meals. Bill Sander, Kenneth Gray, and Eric Dillard had to assist the Plaintiff because of the amount of pain the Plaintiff endured.

45. On or about August 12, 2009 the Plaintiff was called to see Missy Lancaster. Missy Lancaster gave the Plaintiff naproxen for swelling, did not give the Plaintiff anything for pain, and did not give the Plaintiff anymore ice. Missy Lancaster informed the Plaintiff that she was scheduling a doctor visit.

46. After leaving Missy Lancaster's office and returning to cell 791, the Plaintiff had to take a shower but could not do so because of level of pain he experienced was too high.

47. On or about August 13, 2009 the Plaintiff filled out a nurse slip and was informed by Missy Lancaster that she was not certain when he would see the doctor.

48. On or about August 14, 2009 the naproxen was not helping the Plaintiff. The Plaintiff's level of pain greatly increased. The Plaintiff filled out a nurse's slip but was never taken to see the nurse.

49. On or about August 15, 2009 the Plaintiff was called by the nurse because the swelling of his foot had become unmanageable. The Plaintiff's pain level reached a new high. The Plaintiff received no medical treatment other than ibuprofen 800 despite the fact the Plaintiff could not move his foot.

50. On or about August 16, 2009 the Plaintiff woke up to a purple foot and ankle. The Plaintiff could do nothing more than lay in his bunk.

51. On or about August 17, 2009 the Plaintiff attempted to inquire about his alleged upcoming doctor visit but guards would not stop by his cell.

52. On or about August 18, 2009 the Plaintiff had to attend court. When the Plaintiff reached the holding cell, the Plaintiff informed Lieutenant Dietrich about his ankle.

53. Despite the Plaintiff's disclosure to Lieutenant Dietrich, a shackle was placed around the Plaintiff's injured ankle. The injury was very obvious.

54. The Plaintiff attempted to persuade Lieutenant Dietrich to remove the shackle showing Lieutenant Dietrich the increase in swelling caused by the shackle. Lieutenant Dietrich refused to remove the shackle despite the obvious increase in swelling.

55. On or about August 19, 2009 the Plaintiff still had not been allowed to see a physician.

56. On or about August 20, 2009 Doctor Mesa of Madisonville, KY examined the Plaintiff's leg and asked the Plaintiff how long he had been walking on it. The Plaintiff explained that he had been forced to walk on his leg for almost two weeks.

57. Doctor Mesa responded that the Plaintiff's foot and ankle were not in good shape and informed the Plaintiff that he had a torn achilles tendon.

58. Doctor Mesa put the Plaintiff in a splint and boot and instructed Deputy Jailer Faulk that the Plaintiff was not to put pressure on his right leg.

59. The next day the splint broke and the Plaintiff informed every official in the jail that he could but no employee took action.

60. Additionally, Deputy Jailer Faulk did not inform anyone of Doctor Mesa's instructions.

61 On or about August 21, 2009 the Plaintiff's foot was still extremely swollen and he had yet to have a MRI.

62. On or about August 26, 2009 the Plaintiff went for an MRI and learned that only half

of his Achilles tendon had started to grow back and the other half was in his ankle.

63. The Plaintiff informed Dr. Mesa that he was required to walk around on his injured leg and foot.

64. On or about August 27, 2009 the Plaintiff filled out another nursing slip but received no response from Missy Lancaster or the guards.

65. On or about August 28, 2009 Missy Lancaster came to Plaintiff's cell and told the Plaintiff to stay off his injured foot. Missy Lancaster also gave the Plaintiff Tremidol. The Tremidol did not help the Plaintiff's pain and swelling.

66. The Plaintiff was informed that in order to have crutches he would have to go to isolation.

67. Major Howard told the Plaintiff to go to isolation or do without crutches. Despite the Plaintiff's attempt to explain that he could not stand alone to shower Major Howard maintained his position.

68. On or about August 29, 2009 the Plaintiff was still in an enormous amount of pain and burning. Dr. Mesa told the Plaintiff to inform someone if he was still in pain and despite informing employees of the Christian County Jail, the Plaintiff got no response.

69. On or About September 1, 2009 the Plaintiff went back to Dr. Mesa and had his leg examined.

70. Dr. Mesa informed the Plaintiff that he needed surgery and set a date for September 4, 2009.

71. As he was leaving, the Plaintiff over heard a phone call with Dr. Mesa in which Dr. Mesa informed the other person that the surgery could not wait until September 10, 2009. The phone call was between Dr. Mesa and someone at the Christian County Jail.

72. Prior to surgery the Plaintiff was informed that he would be released eight days before his court date.

73. The Plaintiff was informed that the jail did not want to pay his Doctor bill.

74. Since being released from the Christian County Jail the Plaintiff continues to suffer many complications from his injuries.

75. The Plaintiff is unable to work, to engage in exercise, and has trouble playing with his children.

76. The Plaintiff's four children often request that he play with them but the Plaintiff is unable to do so because of the injuries he sustained because of the lack of medical treatment he endured while at the Christian County Jail.

77. Missy Lancaster, Brad Boyd, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard were all aware of the extent and seriousness of injuries that the Plaintiff suffered yet ignored medical standards for culpable, reckless, and grossly-negligent reasons.

78. Missy Lancaster, Brad Boyd, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard saw the Plaintiff in great pain, heard the Plaintiff groan in agony, and witnessed the Plaintiff's poor motor skills yet repeatedly denied medical care necessary to avoid permanent injury to the Plaintiff.

79. Missy Lancaster, Brad Boyd, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard were trained to recognize and to handle situations in which inmates suffered serious injury yet made a conscious decision to disregard their training.

80. On information and belief Brad Boyd, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard witnessed, in person, the burdensome amount of pain the

Plaintiff endured and purposefully declined to provide necessary medical attention.

81. The denial of medical care was a product of custom and policy amongst Christian County Jailers to deny prisoners necessary medical care in order to limit costs to the jail and to inflict additional punishment on the inmate population.

### COUNT I VIOLATION OF 42 U.S.C. § 1983
### (Brad Boyd, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard)

82. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

83. The denial of medical care to the Plaintiff could not be supported by any competent recognized medical authority.

84. The Plaintiff had been suffering a severe and obvious injury at the time and the proper medical care was not provided.

85. The Christian County Jail and its employees denied the Plaintiff medical care in a reckless, grossly-negligent, callous, injurious, repugnant, and/or culpable way.

86. The complete denial of medical care for extended times was a product of arbitrary decisions that were made without regard for due process of law and without respect for the Plaintiff's interest in being free from cruel and unusual punishment.

87. The denial of adequate medical care and the deprivation of the basic elements of medical care was a product of arbitrary decisions that were made without regard for due process of law and without respect for the Plaintiff's interest in being free from cruel and unusual punishment.

88. The additional punishment inflicted upon the Plaintiff in the form of pain and suffering; stemming from a denial of medical care, was in excess of the punishment adjudicated in a court of law. The Defendants acted with deliberate indifference toward the Plaintiff's

constitutional rights.

89. Proper medical care was essential to preserving the Plaintiff's health and ability to conduct a normal life.

90. The Plaintiff suffered mental, physical, and emotional damages as a direct and proximate result of the complete denial of medical care for extended periods and the inadequate medical care received when medical care was actually provided.

## COUNT II NEGLIGENCE
### (Brad Boyd, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard)

91. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

92. Defendants had a duty to provide adequate medical treatment to the Plaintiff.

93. Defendants had a duty to follow Christian County Jail policy, training, and procedure concerning inmate access to medical care.

94. Defendants had a duty to follow the laws and regulations of The Commonwealth of Kentucky and these United States of America.

95. Defendants breached their duties to the Plaintiff.

96. The breaches of duty were the direct and proximate cause of the injuries the Plaintiff suffered and continues to suffer.

97. Plaintiff suffered and continues to suffer emotional, physical, and mental damages from denial of medical care and inadequate medical care.

## COUNT III VIOLATION OF 14TH AMENDMENT DUE PROCESS
### (Brad Boyd, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard)

98. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

99. Defendants violated the Plaintiff's rights, under both the Fourteenth Amendment of the United States Constitution and the Kentucky Constitution, to due process of law and to his liberty.

100. Plaintiff suffered numerous personal injuries as a direct and proximate result of the Defendants' actions.

### COUNT IV VIOLATION OF 8TH AMENDMENT PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT
### (Brad Boyd, Missy Lancaster, Officer Hensley, Lieutenant Dietrich, Deputy Jailer Faulk, and Major Howard)

101. Plaintiff incorporates by reference each and every allegation contained in the paragraphs above:

102. All Defendants or some combination of Defendants caused the Plaintiff to endure punishment in excess of contemporary standards of decency.

103. The Defendants' actions caused the Plaintiff to experience continuing physical injuries, to experience intense pain, and deprived him of his protected liberties.

### PRAYER FOR RELIEF

**Wherefore**, the plaintiff respectfully request judgment in favor of the plaintiff against the defendants on all counts for:

1. Compensatory damages;
2. Punitive damages;
3. Reasonable attorney's fees;
4. Their costs and expenses;
5. Trial by jury, and
6. Any and all other relief that plaintiff is entitled.

                Respectfully Submitted,

/s/ Eric C. Deters
Eric C. Deters
Kentucky Registration No. 81812
Attorney for Plaintiff
Eric C. Deters & Associates PSC
5247 Madison Pike
Independence, KY 41051-7941
859-363-1900   Fax: 859-363-1444
Email: eric@ericdeters.com