UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-32

**DAMON POINDEXTER**                                                                               **PLAINTIFF**

**V.**

**BRAD BOYD, et al.**                                                                                 **DEFENDANTS**

### MEMORANDUM OPINION

Defendants have filed a motion for summary judgment (DN 23). Plaintiff has filed a response (DN 24, 36). Defendants have filed a reply (DN 49). This matter is now ripe for adjudication. For the following reasons, Defendants' motion for summary judgment (DN 23) is GRANTED.

### BACKGROUND[1]

Plaintiff Damon Poindexter was incarcerated at the Christian County Jail on July 19, 2009. On August 10, 2009, while Plaintiff was playing basketball during the recreation period, he injured his right ankle and fell to the ground. A fellow inmate assisted Plaintiff back to the locked door and buzzed the guard for help. The inmates stood waiting at the door for approximately five to fifteen minutes before Defendant Officer Chris Hansely arrived. Defendant Hansley took Plaintiff to a conference room to be seen by a nurse. Defendant Hansley testified that Plaintiff limped to the conference room without receiving assistance from either another inmate or him. The nurse, Defendant Missy Lancaster informed Plaintiff that he might have a torn Achilles tendon. Defendant Lancaster gave Plaintiff ice and ibuprofen and provided him with instructions to continue the ibuprofen and ice as needed. Plaintiff asserts that

---

[1] Because this is a motion for summary judgment, the facts are portrayed in the light most favorable to the plaintiff.

although he received the ibuprofen, he did not get the ice. Defendant Lancaster did not inform Defendant Hansley about Plaintiff's ability to walk and did not offer Plaintiff crutches.

The following day, on August 11, 2009, Plaintiff submitted a medical request form regarding his injured ankle. Plaintiff was seen by Defendant Lancaster the next day. At that time, Plaintiff's ankle was bruised, swollen, and tender. In response to Plaintiff's complaints of pain, Defendant Lancaster switched his ibuprofen to naproxen and placed him on a list to see the doctor. Plaintiff was examined by the jail physician, Dr. Aubrey Armstrong[2] on August 13, 2009. Dr. Armstrong stated that he believed Plaintiff had a torn Achilles tendon and referred him to an orthopedic doctor. On August 14, 2009, Plaintiff submitted another medical request form, complaining that he needed something for the pain and that the swelling was getting worse. Plaintiff was seen by medical staff the next day and was switched back to ibuprofen. Plaintiff continued taking ibuprofen three times a day until August 28, 2009.

On August 18, 2009, Plaintiff was required to appear in court. The midnight shift supervisor, Defendant Officer Chris Dietrich, was responsible for preparing the inmates for morning court. Pursuant to jail policy[3], Defendant Dietrich placed leg shackles on Plaintiff before transporting him to court. Before placing the shackles on Plaintiff, Plaintiff informed Defendant Dietrich that he had a "busted" Achilles tendon and requested that the shackles not be used. However, Defendant Dietrich testified that he looked at Plaintiff's ankle and did not notice any swelling. After being shackled, Plaintiff had to walk approximately forty yards to the transport vehicle.

---

[2] Dr. Armstrong is not a party to this lawsuit.
[3] It is the jail's policy to handcuff and shackle all inmates when they go to court, unless the presiding judge orders otherwise. Defendant Dietrich testified that this is a safety precaution that is done at the request of the court's bailiffs.

On August 20, 2009, Plaintiff was seen by Dr. Mesa in Madisonville, Kentucky. Defendant Deputy Michael Faulk transported Plaintiff to Dr. Mesa's office. Dr. Mesa's records indicate that Plaintiff was unable to fully dorsiflex and plantar flex his right ankle, meaning that he was unable to raise or bring up his ankle and therefore walked with his right foot dragging. Plaintiff was diagnosed with a torn Achilles tendon, placed in a splint boot, and instructed to use crutches. Dr. Mesa also ordered Plaintiff to stay off of his injured ankle as much as possible and to continue the medications[4] and ice. Upon returning to the jail, Defendant Faulk placed the paper work from the doctor in the nurse's box, but did not verbally relay any of Dr. Mesa's instructions to anyone in the jail's medical department. After his appointment with Dr. Mesa, Plaintiff did not use crutches[5] and his splint broke in two days.

On August 26, 2009, Plaintiff was sent out to receive an MRI in order to properly diagnose Plaintiff's injury. On August 27, 2009, Plaintiff's mother, Glenda Wilson, called the Kentucky Department of Corrections[6] regarding Plaintiff's medical care. In response, Rodney Ballard, the Deputy Commissioner, called the Christian County Jail and spoke to Defendant Lancaster. Mr. Ballard made Defendant Lancaster aware that Plaintiff's mother was concerned about the care he was receiving. After this conversation, Defendant Lancaster spoke with Defendant Chief Deputy Steve Howard about the call.

Defendant Lancaster called about the MRI results on August 27, 2009, and received confirmation that Plaintiff had an apparent near complete or complete tear of his Achilles tendon. The MRI report also indicated the presence of edema. Defendant Lancaster then called Dr.

---

[4] Dr. Mesa could not prescribe narcotics due to Plaintiff's incarceration.
[5] It is unclear what happened to the crutches Plaintiff received at his appointment with Dr. Mesa. Plaintiff asserts that he was denied his crutches at the jail. However, Defendant Lancaster noted in the plaintiff's Progress Notes that Dr. Mesa's recommendation that Plaintiff use crutches was not noted on the papers returned from the appointment.
[6] Plaintiff's mother testified that she called the jail and spoke with the nurse regarding Plaintiff's care. However, the nurse's notes state that the Department of Corrections called the jail and told the nurse the plaintiff's mom had called the DOC.

Mesa's office in hopes of getting Plaintiff's appointment moved up from September 1, 2009. Defendant Lancaster was informed at this time that she could either send Plaintiff to the hospital or wait to talk to Dr. Mesa until the next day. When Defendant Lancaster did speak with Dr. Mesa on August 28, 2009, Dr. Mesa informed her that he was unable to see Plaintiff sooner and that waiting until the September 1, 2009 appointment would not change the outcome or worsen Plaintiff's injury. Dr. Mesa also shared his concern that Plaintiff was not wearing his splint or using his crutches. In response, Defendant Lancaster told Plaintiff to wear his splint.[7]

Plaintiff's journal indicates that he placed additional medical request forms on August 27 and August 28, 2009[8]. On August 28, 2009, in response to Plaintiff's complaints of pain, the jail physician prescribed Tramadol. On August 31, Plaintiff was offered a set of crutches by Defendant Howard. Defendant Howard informed Plaintiff that in order to receive the crutches, he would have to go into the insolation unit. This is required as a safety precaution, because the inmates could use the crutches as a weapon. If Plaintiff had gone into the isolation unit, he would have had the same privileges as the general population and would have been able to speak with other inmates in surrounding cells. Plaintiff refused the crutches because he did not want to go into isolation. Defendant Howard testified that the jail allows inmates to refuse medical assistance unless their condition is life threatening.

Plaintiff saw Dr. Mesa on September 1, 2009 and was scheduled for surgery on September 4, 2009. After Defendant Jailer Brad Boyd learned that Plaintiff was to have surgery, he called Judge John Atkins of the Christian County Court, Division II to request the release of Plaintiff. Plaintiff was released from jail on bond prior to his surgery. Plaintiff received surgery as scheduled on September 4, 2009. Afterwards, Dr. Mesa prescribed Loratab for the pain, a

---

[7] Defendant Lancaster testified that she was not aware that Plaintiff's splint was broken at this time.
[8] Plaintiff dated his medical request form August 29, 2009; however, the doctor's notes indicate that he was seen in response to this request on August 28, 2009.

narcotic that would not have been available to Plaintiff while incarcerated. Plaintiff did physical therapy for a period of time following the surgery. Dr. Mesa continued follow-up care for Plaintiff until May 13, 2010. Dr. Mesa noted that at that time, Plaintiff had a full range of motion and there had been an "excellent repair" of Plaintiff's ankle.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Key*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which a trier of fact could reasonably find for the plaintiff. *See id*., (citing *Anderson v. Liberty Lobby, Inc.*, 477 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Sys. Corp*., 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff has alleged a § 1983 constitutional violation as a result of his cruel and unusual punishment due to Defendants' deliberate indifference to his serious medical needs. Although Defendants did not cause his injury, Plaintiff asserts that the "failure to provide simple, rudimentary help and treatment to [Plaintiff] [ ] would have prevented his long, continuous suffering." Plaintiff's Response, DN 24, at 13. Plaintiff further asserts that "Defendants had knowledge of both the continuous nature and severity of the Plaintiff's injury and pain, yet failed to provide access to emergent medical care or any basic medical equipment that would have allowed him to ambulate without exacerbating his pain." *Id*. at 14. Plaintiff has also alleged a supervisory liability claim against Defendants Boyd and Howard.

To establish a claim pursuant to § 1983, a plaintiff must establish "(1) the defendants deprived [plaintiff] of a right, privilege, or immunity secured to [him] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Gregory v. Shelby County, Tenn*., 220 F.3d 433, 441 (6th Cir. 2000), *abrogated on other grounds as stated in DiLaura v. Township of Ann Arbor*, 471 F.3d 666, 671 n. 2 (6th Cir. 2006). Defendants aver that summary judgment may be properly granted on all counts because (1) Plaintiff failed to exhaust available administrative remedies, (2) Defendants are entitled to qualified immunity, and (3) the conduct of Defendants does not amount to a violation of Plaintiff's constitutional rights. The Court will examine each argument in turn.

## I.  Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendants assert that because

Plaintiff never filed any complaints or grievances with the Christian County Jail or any other agency of the state of Kentucky regarding his treatment while incarcerated, that his claims are barred by the PLRA.  Plaintiff responds that the PLRA exhaustion requirement does not apply to former prisoners.

Although some courts have held that the PLRA's exhaustion requirement applies to preclude unexhausted claims brought by former prisoners involving prison conditions, *see Morgan v. Maricopa County*, 259 F. Supp. 2d 985, 922 (D. Ariz. 2003); *Zehner v. Trigg*, 952 F. Supp. 1318, 1327 (S.D. Ind. 1997), this Court believes that the plain language of the statute compels a conclusion that the exhaustion requirement applies only to persons who are prisoners confined in a jail, prison, or other correctional facility at the time they file a § 1983 action and not to former inmates who bring actions after their release from custody.  Although the Sixth Circuit has not decided this issue, other circuits have relied on the plain text of the statute to determine that the PLRA does not apply to former prisoners.  *See Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir.. 2000); *Greigg v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998).

Plaintiff was not a prisoner at the time he filed this § 1983 action.  Plaintiff was released prior to September 4, 2009 in order to obtain surgery on his injured ankle.  He filed his Complaint on February 10, 2010 following his release from the Christian County Jail.  Accordingly, Plaintiff was not a "prisoner" subject to the exhaustion requirements of the PLRA at the time he instituted suit in this matter and his § 1983 claims are not barred.

**II.   Qualified Immunity Standard**

The doctrine of qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court mandates "a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 123 S.Ct. 808, 815 (2009).

> "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right . . . [s]econd, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct."

*Id.* at 815-16. While a court was originally mandated to evaluate the steps in numerical order, the Supreme Court recently stated that "the judges of district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first[.]" *Id.* at 818. In the instant case, the issue is whether Defendants violated Plaintiff's constitutional rights and if so, whether those rights were clearly established at the time that Defendants violated them. Plaintiff has alleged constitutional violations as a result of deliberate indifference to his medical needs.

**III. Constitutional Violations**

As its jurisprudence has evolved, the Supreme Court has stated that the Eighth Amendment encompasses "the evolving standards of decency that mark the progress of a maturing society" and "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal quotations omitted). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* Failure to provide medical care could produce pain and suffering, physical torture or a lingering death "inconsistent with contemporary standards of decency[.]" *Id.* Accordingly, the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104.

"This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

A constitutional claim for denial of medical care has both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. "As the Supreme Court explained in *Farmer*, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm,'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)(quoting *Farmer*, 511 U.S. at 834), so as to avoid the "unnecessary and wanton infliction of pain. *Farmer*, 511 U.S. at 834. The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Blackmore,* 390 F.3d at 895. Officials have a sufficiently culpable state of mind where they act with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834.

In evaluating a deliberate indifference claim, the court "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)(citing Westlake, 537 F.2d at 860 n. 5). Where the prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

    **a.** *Sufficiently Serious Medical Condition*

Plaintiff must put forth evidence that shows that his medical needs were sufficiently serious. A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). However, this "obviousness" standard is distinct from the separate branch of Eight Amendment decisions where the seriousness of a prisoner's medical needs "may *also* be decided by the effect of *delay* in treatment." *Id.* at 897 (quoting *Hill v. Dekalb Revional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Within this separate branch are decisions which involve delayed treatment which caused injury, loss, or handicap; delayed administration of medication; determinations by medical personnel that medical treatment was unnecessary; and determinations of whether the prisoner was treated adequately. *Id.* at 897-98. Where the plaintiff's deliberate indifference claim is based on the prison's failure to treat a condition adequately, medical proof is necessary to assess whether the delay caused a serious medical injury. *Blackmore*, 390 F.3d at 898.

Because Plaintiff was continually treated by medical personnel, the Court finds that Plaintiff's claim is based on the defendants' failure to treat his Achilles tendon injury adequately. Although the Court agrees that the seriousness of Plaintiff's injury was obvious, Plaintiff received medical treatment almost immediately and continued to receive medical treatment until his release from the Christian County Jail. Additionally, this is not a case where the medical attention rendered was "so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5. Plaintiff was seen by Defendant Lancaster less than one hour after injuring his right ankle. He was seen by Defendant Lancaster again two days later and was placed on the list to see the jail physician. The jail physician saw Plaintiff the following day and referred him

to an orthopedist.  One week later, Plaintiff attended his appointment with the orthopedist, Dr. Mesa.  Plaintiff received an MRI and attended another appointment with Dr. Mesa within twelve days.  Plaintiff then had surgery as scheduled three days later.  Additionally, Plaintiff was seen by medical staff multiple times in response to his medical requests and continuously received medication for the pain.  The records also show that the defendants changed Plaintiff's medications in an attempt to provide him with better pain management.  Accordingly, the dispute is over the adequacy of the medical treatment Plaintiff received and the "obviousness" standard does not apply.

  Because Plaintiff's "deliberate indifference" claim is based on the prison's failure to treat his condition adequately, Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Blackmore,* 390 F.3d  at 898 (quoting *Napier*, 238 F.3d at 742).  Plaintiff's mother, Glenda Wilson, testified that when she spoke to Dr. Mesa he told her that "if he could have got him attention sooner it might not have been in as bad a shape as it was."  Deposition of Glenda Wilson, at 27.  However, such a statement is non-admissible hearsay and cannot be considered by a trial court ruling on a motion for summary judgment.  *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994).  Additionally, Dr. Mesa noted in his records that Plaintiff had full range of motion at the conclusion of his treatment and that there had been an excellent repair of Plaintiff's ankle.  Plaintiff also has submitted medical request forms from a subsequent incarceration which indicate that his right ankle and foot still swell and cause him pain; however, there is no medical evidence to support the contention that these symptoms are detrimental effects caused by the delay or inadequacy of medical treatment Plaintiff received from the defendants and not simply the lingering effects of the injury itself.

Plaintiff also contends that pain itself can be a "sufficiently serious medical need" for purposes of a deliberate indifference claim and that the inadequate medical treatment caused Plaintiff to suffer "prolonged and unnecessary pain." Specifically, Plaintiff points to the defendants failure to provide emergent care, failure to provide crutches or a wheelchair, and failure to provide assistance in walking or with daily tasks. Because the defendants did treat Plaintiff's injury and pain, the dispute is over the adequacy of the medical care he received and Plaintiff must put forth verifying medical evidence. Plaintiff has presented medical evidence in the form of medical records and medical request forms that he was in pain throughout his incarceration. However, evidence that Plaintiff suffered pain does not constitute verifying medical evidence that the pain he suffered was caused by inadequate medical treatment and not simply from the injury itself. Accordingly, Plaintiff has failed to create a genuine issue of material fact regarding the severity of his injuries.

    **b.** *Deliberate Indifference*

Plaintiff has also failed to raise a genuine issue of material fact regarding whether the prison officials acted with "a sufficiently culpable state of mind in denying medical care." *Blackmore,* 390 F.3d at 895. Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. Accordingly, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005)(internal quotations omitted). However, it is not necessary for the plaintiff to show that the prison official "acted for the very purpose of causing harm or with knowledge that harm will result." *Id*. "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of

recklessly disregarding that risk." *Id*. "[A] plaintiff can also establish deliberate indifference by a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment [or] . . . when the need for treatment is obvious [and] medical care . . . is so cursory as to amount to no treatment at all." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002) (internal citations omitted).

Defendant Missy Lancaster

Defendant Lancaster is the nurse who saw Plaintiff within an hour of his injury. Plaintiff alleges that Defendant Lancaster was deliberately indifferent because she failed to provide Plaintiff with emergent care. When Defendant Lancaster saw Plaintiff after he injured his ankle, she told Plaintiff he might have a torn Achilles tendon and gave him ibuprofen and ice.[9] Plaintiff was again seen by Defendant Lancaster two days later, when she switched the medication to naproxen and put him on a list to see the jail physician. The Court is reluctant to second guess Defendant Lancaster's medical judgment that it was unnecessary to immediately send Plaintiff to the emergency room without first being seen by the jail physician. Additionally, after calling to receive Plaintiff's MRI results confirming the torn Achilles tendon, she called to get Plaintiff's appointment with Dr. Mesa moved up. Although given the choice to send Plaintiff to the hospital instead of wait, Defendant Lancaster was told by Dr. Mesa that waiting would not harm the plaintiff. Although Plaintiff disagrees with Defendant Lancaster's decision not to send him to the hospital, a difference of opinion between the patient and healthcare professionals does not give rise to a constitutional claim. *See Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

---

[9] The Court notes that Defendant Lancaster disputes that she saw Plaintiff immediately after he was injured, but instead maintains that she did not see him until August 12, 2009. Defendant Lancaster also disputes that she told Plaintiff he might have a torn Achilles tendon, and instead recalls that she told him he might have torn some tendons. However, because this is a motion for summary judgment, the Court will portray the facts in the light most favorable to the plaintiff.

Plaintiff also alleges that Defendant Lancaster failed to ensure that he received assistance in his daily tasks, failed to check in on Plaintiff, and failed to follow up with the doctors and ensure that Dr. Mesa's instructions were carried out.  However, there is no evidence that Plaintiff requested assistance with his daily tasks from Defendant Lancaster.  Additionally, Defendant Lancaster responded within 24 hours to the medical request forms Plaintiff submitted.  As to Plaintiff's allegations that Defendant Lancaster did not ensure Dr. Mesa's instructions were carried out, the evidence shows that Defendant Lancaster did not know of the instructions to use crutches until August 28, 2009 as it was not noted on the papers that were returned from Plaintiff's first appointment with Dr. Mesa.

Plaintiff further alleges that Defendant Lancaster "adhered to an easier method to treat [Plaintiff's] pain that she know was not defective."  Plaintiff's Response, DN 24, at 20.  However, Plaintiff was not authorized to provide inmates with stronger pain medication.  To receive narcotic pain medication, the jail physician would need to prescribe it.  Notably, the jail physician did not prescribe such medication and is not a party to this action.  Additionally, Defendant Lancaster questioned Dr. Mesa and the jail physician for an increase in pain medication.  In response, the jail physician ordered that Plaintiff be given Tramadol.  Accordingly, there is no evidence that Defendant Lancaster was deliberately indifferent.

Defendant Chris Hansley

Defendant Hansley was the Deputy Jailer who took Plaintiff to the nurse immediately following his injury.  Plaintiff alleges that Defendant Hansley did not allow another inmate to assist Plaintiff in walking, provided no crutches or a wheelchair, failed to ensure Plaintiff received emergent care, and failed to ensure that the instructions provided by the nurse were followed out.  Non-medical administrators are entitled to defer to the judgment of health

professionals as long as they do not ignore the prisoner. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). There is no evidence that Plaintiff requested crutches or a wheelchair from Defendant Hansley or that Defendant Hansley prevented another inmate from helping Plaintiff walk. In fact, Defendant Hansley testified that he asked Plaintiff if he needed assistance and Plaintiff responded "No; I'm good." Hansley Deposition, at 26:23. Additionally, Defendant Hansley provided Plaintiff with another bag of ice and ibuprofen on the night of his injury. When Plaintiff requested ice and ibuprofen, Defendant Hansley again provided it to him. There is no evidence that Defendant Hansley ignored Plaintiff or his needs. Accordingly, Defendant Hansley was not deliberately indifferent.

Defendant Chris Dietrich

Defendant Dietrich's only interaction with Plaintiff occurred when he prepared Plaintiff for court. Plaintiff alleges Defendant Dietrich was deliberately indifferent by placing shackles on Plaintiff's ankles despite Plaintiff's request not to use the shackles due to his injury. Despite Plaintiff's assertion that the use of the shackles was "illogical" because Plaintiff could not run away, there is no evidence that Defendant Dietrich knew of any substantial risk that might result from placing the shackles around his ankles. The use of the leg shackles is mandated by policy of the jail and Defendant Dietrich was not instructed that it was unnecessary to use the shackles on Plaintiff. Defendant Dietrich testified that he did not notice anything wrong with the ankle and he observed Plaintiff walking without assistance. Additionally, Plaintiff did not request crutches or a wheelchair from Defendant Dietrich. Accordingly, there is no evidence that Defendant Dietrich was deliberately indifferent.

Defendant Michael Faulk

Defendant Faulk escorted Plaintiff to his appointment with Dr. Mesa. Plaintiff alleges that Defendant Faulk was deliberately indifferent because he did not verbally relay Dr. Mesa's instructions that Plaintiff wear a splint, utilize crutches, and not place weight on his ankle. Plaintiff also alleges Defendant Faulk was deliberately indifferent in failing to ensure that Plaintiff received crutches. However, Defendant Faulk did place the paperwork from Plaintiff's appointment with Dr. Mesa in the nurse's box and the nurse did in fact receive these instructions. Plaintiff did have crutches when they returned to booking at the jail, but it is unclear what happened to the crutches after booking. The evidence does show however, the when Plaintiff was offered crutches, he refused them because he did not want to go into isolation. Defendant Faulk at no time ignored Plaintiff or his medical needs. Accordingly, there is no evidence that Defendant Faulk was deliberately indifferent.

Defendant Steve Howard

Defendant Howard was informed that the Department of Corrections called the jail. Defendant Howard also offered Plaintiff crutches, which he refused. Plaintiff alleges that Defendant Howard was deliberately indifferent because he failed to investigate the medical care Plaintiff was receiving or simply speak to Plaintiff. However, after speaking to Defendant Lancaster, Defendant Howard knew that Plaintiff was being seen by the nurse, by the jail physician, and by Dr. Mesa. As a non-medical administrator, he was entitled to defer to the judgment of the health professionals. He at no time ignored Plaintiff or his medical needs. Accordingly, there is no evidence that Defendant Howard was deliberately indifferent.

Defendant Brad Boyd

Defendant Brad Boyd was also informed of the call from the Department of Corrections. Plaintiff alleges that, like Defendant Howard, Defendant Boyd did not investigate the care

Plaintiff was receiving or simply speak to Plaintiff.  Plaintiff also alleges that when Defendant Boyd spoke to Tiffany Dietrich, Plaintiff's long-time girlfriend and mother of his children, he laughed at her.[10]  However, this is insufficient to support Plaintiff's contention that Defendant Boyd was deliberately indifferent.  Defendant Boyd was not directly involved in Plaintiff's medical care.  After receiving notice of the call from the Department of Corrections, Defendant Boyd was informed that Plaintiff had seen the nurses, had seen the jail physician, and had an appointment set up with Dr. Mesa.  Defendant Boyd was entitled to rely on the judgment of the medical personnel.  Additionally, there is no evidence that Defendant Boyd ever ignored Plaintiff or his needs.  Accordingly, there is no evidence that Defendant Boyd was deliberately indifferent.

## IV. Supervisory Liability Claims

Plaintiff also asserts that Defendants Howard and Boyd are liable under a theory of supervisory liability and that they ratified the conduct of the other Defendants because they did not take any measures to investigate or rectify Plaintiff's immediate medical needs.  "Section 1983 liability will not be imposed solely upon the basis of respondeat superior.  There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1992), *cert denied*, 509 U.S. 903 (1993).

Defendant Boyd did not directly participate in the care of Plaintiff.  Defendant Howard's only direct participation in the care of Plaintiff occurred when he offered Plaintiff crutches.

---

[10] Tiffany Dietrich actually testified that her mother called the jail and spoke with Brad Boyd.  Brad Boyd disputes that he ever spoke to any of Plaintiff's family members.

Because this Court has determined that the conduct of Defendants Boyd and Howard's subordinates did not constitute deliberate indifference, Plaintiff cannot show that either Defendant Boyd or Defendant Howards authorized, approved, or knowingly acquiesced in unconstitutional conduct.  Accordingly, Plaintiff has not raised a genuine issue of material fact as to the supervisory liability of either Defendant Boyd or Defendant Howard.

## CONCLUSION

Given the analysis of Defendants' conduct pertaining to Plaintiff's § 1983 claims, Plaintiff has not come forth with sufficient evidence tending to show that any defendant violated Plaintiff's Eight Amendment right to be free from cruel and unusual punishment by depriving Plaintiff of needed medical assistance.  Because the Court has determined that the defendants' conduct in the circumstances did not amount to deliberate indifference, the Court need not reach the issue of whether such a right was clearly established.  Accordingly, Defendants are afforded qualified immunity from Plaintiff's § 1983 claims.

In addition to the § 1983 claims, Plaintiff asserted negligence claims against all of the defendants.  Complaint, DN 15, ¶¶ 91-97.  Whether or not the negligence claims were included in Defendants' Motion for Summary Judgment is not clear as neither party briefed the issue. The Court notes, however, that Plaintiff has not produced expert testimony to show that Defendants failed to conform to the standard of care.  *See Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992).  Nevertheless, because the Court has dismissed Plaintiff's § 1983 claims, the Court will decline to exercise jurisdiction over Plaintiff's state law negligence claims. 28 U.S.C. § 1367(c).

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to all Defendants and all claims. A separate Order shall issue.